IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**ISLAMIC CENTER OF NORTHWEST ARKANSAS**                                    **PLAINTIFF**

**V.**                                    **CASE NO. 5:25-CV-5090**

**CHURCH MUTUAL INSURANCE COMPANY, S.I.**                                    **DEFENDANT**

<u>**OPINION AND ORDER**</u>

Before the Court are Defendant Church Mutual Insurance Company, S.I.'s ("Church Mutual") Motion for Summary Judgment (Doc. 21) and Motion to Exclude Opinions of Edwin Rodriguez (Doc. 19). Plaintiff Islamic Center of Northwest Arkansas ("ICNA") opposes both Motions.[1]  For the reasons stated below, the Motions are **DENIED**.

## I.  BACKGROUND

This case involves a coverage dispute between Church Mutual and its insured, ICNA. The parties agree that ICNA owns a metal-roofed building in Fayetteville, Arkansas, which is used for community worship activities. Church Mutual insures the building and its contents under a Commercial General Liability Insurance Policy that covers costs of repairing or replacing non-cosmetic roof damage caused by wind and/or hail. *See* Doc. 21-7, p. 97. In addition, the Policy covers the cost to repair interior water damage, so long as: "(1) [t]he building or structure first sustains damage by a Covered

---

[1] With respect to the Motion for Summary Judgment, the Court also considered Church Mutual's Brief in Support (Doc. 22) and Statement of Facts (Doc. 23); ICNA's Response in Opposition (Doc. 27), Brief in Support (Doc. 28), and Statement of Facts (Doc. 29); and Church Mutual's Reply (Doc. 34). With respect to the Motion to Exclude, the Court also considered Church Mutual's Brief in Support (Doc. 20) and ICNA's Response in Opposition (Docs. 26 & 30) and Brief in Support (Doc. 31).

Cause of Loss [i.e., wind and/or hail] to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or (2) [t]he loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure." *Id.* at 72.

According to ICNA's representative Dr. Khalil Sharif, he and other members of ICNA's congregation first started noticing water damage on the ceilings in the interior of the building either in early June or early July [2024]. *See* Doc. 21-6 (Sharif Dep.), pp. 26–27. The ceiling tiles became wet immediately after "a lot of rain," and these wet spots "were increasing in size," which led ICNA to suspect there was a leak in the roof. *Id.* Dr. Sharif on behalf of ICNA, called Church Mutual to report the suspected roof leak and interior damage on September 7, 2024. *See id.* at 26. He testified that he could not pinpoint the exact date of the storm or storms that caused the damage to the roof, but he knew that   severe storms had been in the area "certainly within a month or two from when [ICNA] started noticing the water leaks." *Id.* at 93.

Church Mutual hired Forensic Engineer Darin Teeman of CAT Forensic Services to inspect the roof, and he did so on November 1, 2024. He determined that the metal roof panels had not been materially damaged by wind or hail; that interior leaks were consistent with installation or maintenance deficiencies with the roof panels unrelated to wind or hail damage; that there was evidence of hail damage, but only on the east exterior wall; and that some damage to the exterior walls was due to installation issues and not some other cause. *See* Doc. 21-5, p. 9. Attached to Mr. Teeman's report were multiple photographs of the roof, walls, and interior of the building, as well as a CoreLogic Weather Verification Services Report, which noted that two hailstorms took place within one mile

of ICNA's building, the first on May 8, 2024, and the second on August 18, 2024. *See id.*
at 41. Mr. Teeman testified that he saw only cosmetic hail damage on the roof, which is
not covered under the Policy. *See* Doc. 21-8 (Teeman Dep.), pp. 71–72, 120.

Dr. Sharif testified that weeks before Church Mutual sent Mr. Teeman to inspect
the roof, the company's insurance agent Douglas Sorenson, had opined to Dr. Sharif over
the phone that ICNA's claim would likely be denied. *See* Doc. 21-6 (Sharif Dep.), pp. 65–
66. Dr. Sharif interpreted this comment to mean "that Church Mutual ha[d] made their
decision to deny the claim" even before sending an inspector to survey the damage, which
suggested to Dr. Sharif that they were "just trying to find reasons to deny it." *Id.* at 66.
Church Mutual denied ICNA's claim in a letter dated December 2, 2024, after Mr. Teeman
completed his report. The letter informed ICNA that its claim for roof damage had been
rejected but that the company was tendering a payment of $9,586.84 to replace two non-
functioning air conditioning units that had been spotted on the property. *Id.* at 71–73, 78.
ICNA disagreed with Church Mutual's decision, so Dr. Sharif called an attorney, who
recommended that ICNA hire its own expert to provide a second opinion. ICNA ultimately
hired a local roofing company called Nomads Enterprises, LLC, to perform a roof
inspection.

The CEO of Nomads Enterprises, Edwin Rodriguez, testified that he and two of his
employees inspected ICNA's roof and interior on December 20, 2024, and submitted a
report on January 29, 2025. Mr. Rodriguez is not a professional engineer, but he has over
fifteen years of practical experience installing and inspecting roofs. He also holds various
professional certifications and memberships in building and roofing organizations. *See*

Doc. 30, p. 119. Mr. Rodriguez inspected ICNA's building for a few hours and took hundreds of photographs. *See* Doc. 19-4 (Rodriguez Dep.), p. 59. He did not attempt to establish when the roof suffered hail and wind damage because he knew that Mr. Teeman had already pulled a CoreLogic storm report, *see id.* at 61, and because Mr. Rodriguez had personal knowledge of "two major storms during that time that had come through" the area, *id.* at 60. Mr. Rodriguez also testified that he had recently repaired or replaced a number of roofs due to wind and hail damage at around the time ICNA submitted its claim. *See id.* at 121. Mr. Rodriguez's report concludes that ICNA's roof, coping systems, and gutters suffered hail damage that had "disrupted the property's interior, necessitating immediate attention to prevent further structural and material deterioration." (Doc. 30, p. 6).

Church Mutual contends that summary judgment is appropriate because ICNA has failed to make a prima facie showing that it suffered a covered loss within the Policy period. This is because Dr. Sharif testified that he was not sure when the storm that damaged the roof occurred. Church Mutual also contends that Mr. Rodriguez refused to directly dispute any particular conclusions in Mr. Teeman's report and failed to rebut Mr. Teeman's opinion that the hail damage was merely cosmetic. Church Mutual also argues that ICNA has failed to produce any admissible evidence of its damages, which means that even if ICNA proved at trial that it suffered a covered loss, it would not be entitled to any award of damages.

In addition to moving for summary judgment, Church Mutual moves to exclude Mr. Rodriguez's expert report and opinions. Church Mutual observes that Mr. Rodriguez is no

expert but is rather just "a roofer" who lacks the appropriate accreditation to testify as an expert in this matter. (Doc. 19, p. 1). Church Mutual believes Mr. Rodriguez's report is devoid of any methodology; in particular, he failed to analyze the roof tiles, assess "pertinent weather data," or consider alternate causes of damage. *Id.* p. 2. Lastly, Church Mutual complains that the two-page estimate of repair costs prepared by Mr. Rodriguez lacks supporting documentation, which makes it unreliable and inadmissible at trial. Specifically, Church Mutual criticizes the portion of the estimate for the use of heavy equipment, a portable toilet, and a safety barricade; the cost of interior painting and removing and replacing ceiling tiles; and the cost of buying and replacing carpets. *See* Doc. 19-3. These costs total $165,166.67, and Church Mutual maintains that Mr. Rodriguez lacks knowledge and expertise to opine about these costs at trial.

ICNA responds that Mr. Rodriguez qualifies as an expert in roof defects, remediation, and repair, and although he did not specify the precise date of the wind and hail event that caused damage to the roof, he confirmed in his deposition that one or more storms close to the time of the claim most likely caused the damage. ICNA concedes that Mr. Rodriguez's explanations are not the same as Mr. Teeman's, but it asks that the jury be permitted to hear Mr. Rodriguez's opinion in light of his expertise in inspecting and installing storm damaged roofs. Finally, ICNA notes Mr. Rodriguez personally reviewed and approved the estimate of damages, which includes services he would ordinarily subcontract out to another entity but could perform if ICNA wished. He also explained in his deposition that ICNA provided him the estimated cost of replacing the carpets in the facility, and no particular evidentiary rule requires him to supply all his underlying

documentation, calculations, or receipts to back up his estimate—if he does not intend to rely on them at trial.

## II.   DISCUSSION

### A.   Motion for Summary Judgment (Doc. 21)

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Subpart (a) to Rule 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment, the Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1998).

After considering the briefing and the evidence presented by both sides, the Court finds that summary judgment is inappropriate because several genuine, material disputes of fact remain, including: (1) whether ICNA's roof suffered cosmetic or non-cosmetic, i.e. covered, damage due to hail and/or wind; (2) when the storm event or events that caused any non-cosmetic damage occurred; (3) whether any water damage to the interior was caused by non-cosmetic wind and/or hail damage to the roof; and the amount of damages necessary to repair all damage covered under the Policy. ICNA and Church Mutual each rely on their experts to establish the cause of the damage, and the jury is entitled to hear

each expert's qualifications, testimony, and other evidentiary support and decide which to believe. As the Court will explain below, ICNA's expert is qualified to render an expert opinion in this case and will be permitted to do so.

As for Church Mutual's argument that the two-page estimate of damages prepared by Mr. Rodriguez is inadmissible, the Court disagrees. Mr. Rodriguez testified that he reviewed and approved all line items on the estimate, and to the extent one line item was provided to him by ICNA, he disclosed that fact and suggests ICNA's representative can testify, if necessary, about that line item. Further, though ICNA has not disclosed to the Court any underlying documentation, receipts, or notes supporting the damages estimate, it is clear that Mr. Rodriguez, witnesses from ICNA, and others may testify as to how they arrived at these estimates. Of course, ICNA will not be permitted to introduce at trial any documents that have not previously been disclosed to Church Mutual. Accordingly, the Motion for Summary Judgment is **DENIED**.

### B. Motion to Exclude Expert Opinions (Doc. 19)

Whether to exclude expert testimony is committed to the district court's discretion—subject, of course, to the Federal Rules of Evidence, including Rule 702. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (2014). Rule 702 states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

7

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The Eighth Circuit has "boiled down" these requirements into a three-part test:

First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Johnson*, 754 F.3d at 561 (quoting *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008)). The proponent of expert testimony bears the burden of showing by a preponderance of the evidence that these requirements are satisfied. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757–58 (8th Cir. 2006).

Beginning with the first part of the test, the Court is persuaded that Mr. Rodriguez possesses specialized knowledge or skill in the areas of roof damage, repair, and replacement and general commercial contracting work. He has fifteen years of experience in these areas and is qualified to offer his opinions. An expert need not have specialized education to qualify as an expert and may be qualified on experience alone. *See Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). "[F]or an expert  witness to be qualified based on experience, that experience must bear a close relationship to the expert's opinion." *Id.* (citing *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 283–84 (8th Cir. 1995)). Most jurors are not general contractors or roofing experts, so Mr. Rodriguez's testimony on these matters will be useful in helping them judge the relevant facts. "Proponents of expert testimony need not demonstrate that the assessments of their experts are correct, and trial courts are not empowered to determine which of several

competing . . . theories has the best provenance." *Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 625 (8th Cir. 2012) (citation modified).

With respect to the second part of the test, the Court finds that Mr. Rodriguez is qualified to assist the trier of fact. "An expert's opinion should be excluded only if that opinion is so fundamentally unsupported that it can offer no assistance to the jury." *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) (internal quotation marks and citation omitted). It is undisputed that Mr. Rodriguez personally inspected ICNA's roof and reviewed and authorized the written report that was produced to Church Mutual in this case, which contains hundreds of accompanying photographs showing areas of alleged non-cosmetic damage. Moreover, not all of Mr. Rodriguez's opinions regarding the roof are included in his report. He clarified and provided further explanations for his opinions in his deposition testimony. *See, e.g.*, Doc. 19-4 (Rodriguez Dep.) , pp. 110–26. Clearly, Church Mutual and Mr. Teeman disagree with Mr. Rodriguez, but such disagreement cannot be dismissed out of hand because Mr. Teeman is a professional engineer and Mr. Rodriguez is not. Mr. Rodriguez noted in his deposition that Mr. Teeman "didn't have that many pictures" of the roof attached to his report, which caused Mr. Rodriguez to question whether Mr. Teeman actually looked at the entire roof or "just . . . a small section or something." *Id.* p. 28. Both experts are sufficiently qualified to offer their dueling opinions to the jury.

As for the third part of the test, the Court finds that Mr. Rodriguez's testimony as to the likely cause of roof damage is reliable or trustworthy in an evidentiary sense. The district court's role as gatekeeper of the evidence requires it "to discern expert opinion

evidence based on good grounds from subjective speculation that masquerades as scientific knowledge." *Ackerman v. U-Park, Inc.*, 951 F.3d 929, 933 (8th Cir. 2020) (quotation omitted). Both Mr. Teeman and Mr. Rodriguez noticed dented panels on the roof. Mr. Rodriguez admits he did not perform scientific tests on any of the panels, *see* Doc. 19-4, p. 119—but neither did Mr. Teeman, *see* Doc. 19-5, p. 8. Both experts conducted purely visual inspections of the roof and interior and came to different conclusions. Mr. Rodriguez's conclusion is not inherently unreliable in an evidentiary sense.

### III.   CONCLUSION

**IT IS THEREFORE ORDERED** that Church Mutual's Motion for Summary Judgment (Doc. 21) and Motion to Exclude Opinions of Edwin Rodriguez (Doc. 19) are **DENIED**.

**IT IS SO ORDERED** on this 9th day of February, 2026.

_____
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE